UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CHRISTOPHER JEFFERSON                                         PLAINTIFF

v.                                                           No. 4:25-cv-30-BJB

PATRICIA DAY, ET AL.                                         DEFENDANTS

* * * * *

MEMORANDUM OPINION & ORDER GRANTING MOTION TO DISMISS

Christopher Jefferson, proceeding *pro se*, has sued two state public defenders, the Chief Public Advocate of the Commonwealth, and an unnamed "Jane Doe" for initiating contempt proceedings against him in the Henderson County District Court. According to his Amended Complaint, which the Courts takes as true at this stage, Jefferson is the father of the juvenile victim and juvenile defendant. As described in this Court's two prior orders denying emergency relief, Jefferson disagreed with the Commonwealth's handling of the case, so he spoke "publicly" about the public defenders' "tactics" and "began advocating on social media" on the victim's behalf. Amended Complaint at 4; *see* DN 15 (TRO Op. 2); DN 5 (TRO Op. 1). In response, Patricia Day, a lawyer with the Kentucky Department of Public Advocacy assigned to represent the juvenile defendant, filed two contempt motions against Jefferson in state court—one in 2023, the other in 2025, alleging that he violated Kentucky's juvenile confidentiality law. Amended Complaint ¶¶ 3, 21, 25 (citing KY. REV. STAT. § 610.340).

Jefferson followed those motions with a federal complaint of his own.[1] On his view, the "misuse of the Commonwealth's judicial machinery" violated a slew of his

---

[1] Jefferson filed an amended complaint, which generally would "supersed[e] the original complaint." *NOCO Co. v. OJ Com., LLC*, 35 F.4th 475, 480 (6th Cir. 2022). But Jefferson refers to his original complaint's exhibits in his amended complaint. *See* Amended Complaint at 5 (citing "Plaintiff's ex. B DPA contempt petition March 2025"). Because Jefferson is representing himself, the Court considers the exhibits in his original complaint to the extent his amended complaint relies on and incorporates them. *See, e.g., Owens v. Keeling*, 461 F.3d 763, 776 (6th Cir. 2006) (courts "construe filings by pro se litigants liberally"); *Yaacov v. Mohr*, No. 1:16-cv-2171, 2022 WL 556734, *4 (N.D. Ohio Feb. 24, 2022) ("Filings by pro se litigants are liberally construed and held to less stringent standards than formal filings by lawyers.").

federal and state rights. Amended Complaint at 8. His two motions for temporary and preliminary injunctive relief have failed because (among other reasons) he neither showed ongoing or imminent harm from the state litigation nor justified emergency federal intervention in state proceedings. *See* Orders (DNs 5 & 15). And now the public-defender Defendants, sued in both their individual and official capacities, have moved to dismiss his complaint in its entirety for failure to state a claim. Motion to Dismiss (DN 16).[2] Mostly because the contempt motions they filed in state court on behalf of their client didn't amount to state action giving rise to federal litigation. MTD at 3–4. And also because the remaining allegations lack the plausibility and specificity to state a claim under state law. *See id.* at 7, 10, 16, 19, 23. Because they're correct, dismissal is appropriate.

### I. Jefferson's Allegations

According to the Amended Complaint, Jefferson's juvenile son committed a crime against his juvenile daughter. Although the Commonwealth charged Jefferson's son as "an adult" in August 2021, the grand jury "inexplicably" "sent [the case] back" to Henderson County's "juvenile court." *Id.* at 4, 5 (apparently referring to the Henderson District Court). Jefferson "began petitioning the government and making public statements as to how the minor victim was being wrongfully treated, ignored and uncared for by the Commonwealth." *Id.* That included "advocating" on his daughter's behalf "on social media … to highlight [the] wrong perpetuated upon her." *Id.* at 4. Patricia Day, who was representing Jefferson's juvenile son, initiated contempt proceedings, arguing that his posts violated Kentucky's juvenile confidentiality statute. *See* KY. REV. STAT. § 610.340 (prohibiting disclosure of "all juvenile court records" to anyone other than "the child, parent, victims, or other persons authorized to attend a juvenile court hearing … unless ordered by the court for good cause").

Jefferson pleaded guilty to contempt in March 2023. Judge Mark Medlin imposed a "suspended" "2 day jail sentence" and "a fine of $750." Amended Complaint at 5. His juvenile son pleaded guilty to the underlying charge a few months later. Then, two years later, Jefferson "made several public statements via social media … on Facebook, community forums, and public meetings regarding his family's and daughter's experiences with the juvenile court system." *Id.* at 5. He lodged "severe critiques" of the Department of Public Advocacy generally, and Day and Root in particular, regarding "their handling of the case and treatment of the victim"

---

[2] Jefferson originally named Judge Medlin as a defendant as well. *See* Complaint (DN 1). But after Judge Medlin dismissed the contempt motion, Jefferson moved to dismiss him as a defendant, DN 6, and the Court did so, DN 10.

during the juvenile proceedings. *Id.* Day filed another contempt proceeding, but Judge Medlin dismissed the motion. *Id.* at 5–6.

These motions prompted Jefferson to sue the Department of Advocacy employees—Patricia Day and Kenneth Stephen Root (who represented his juvenile son), and their boss—Damon Preston, the Commonwealth's Chief Public Advocate. Jefferson also listed as a Defendant an unnamed "Jane Doe," but she hasn't appeared and the docket doesn't reflect any activity or efforts related to the claims against her.

## II. Motion to Dismiss

The three named Defender-Defendants have moved to dismiss each claim against them.

### A. *Rooker-Feldman*

As an initial and overarching matter, at least some of Jefferson's scattershot allegations relate to and arguably challenge his 2023 contempt conviction in the Henderson District Court. Some of his allegations necessarily implicate the legality of the state-court proceedings—"sustaining contempt," Amended Complaint at 7, ¶ 33, "punish[ing] … with incarceration," *id.* at 9, ¶ 42, and "executing an abuse of judicial contempt powers," *id.* at 8, ¶ 36.

To the extent these allegations underlie his First, Fourteenth, and Eighth Amendment claims, the *Rooker-Feldman* doctrine prevents this Court from reviewing the correctness of the state-court contempt finding. *See VanderKodde v. Mary Jane M. Elliot, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020) (doctrine applies when "the source of the plaintiff's injury is the state-court judgment itself"); *Ewing v. O'Brien*, 115 F. App'x 780, 782 (6th Cir. 2004) ("He may not now seek to use this court's federal question jurisdiction to further appeal the state court judgment of contempt."). The *Rooker-Feldman* doctrine bars Jefferson from "complaining of injuries caused by state-court judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

### B. Section 1983 claims against the Public Defender Defendants

Jefferson's federal claims against the Kentucky DPA public defenders concern alleged violations of his First, Fourteenth, and Eighth Amendment rights. *See* Amended Complaint at 1.

**1. Official-capacity claims.** Sovereign immunity bars Jefferson's official-capacity claims for damages. Motion to Dismiss at 5. The Kentucky Department of Public Advocacy employs Patricia Day, Damon Preston, and Kenneth Stephen Root. The Department is "an independent agency of state government." KY. REV. STAT. § 31.010; *Lewis v. Arnette*, No. 2:21-cv-116, 2022 WL 413931, at *2 (E.D. Ky.

Feb. 10, 2022) ("[T]he Kentucky Department of Public Advocacy is a state agency for Eleventh Amendment purposes."). A "suit against a state official in his or her official capacity is ... a suit against ... the State itself." *Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989). And "the Eleventh Amendment bars a damages action against a State in federal court." *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). So sovereign immunity requires dismissal of his official-capacity claims.[3]

### 2. Individual-capacity claims

**i. State action.** To state a claim under 42 U.S.C. § 1983, Jefferson must allege that the Public Defenders "acted under color of state law" and "deprived" him "of rights secured under federal law." *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010) (citing *Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir. 1998). These allegations, however, satisfy neither requirement.

Jefferson alleges that the Public Defenders, "acting under color of law, continued to misuse subpoena and contempt powers … to violate [his] federally protected civil rights." Amended Complaint at 9, ¶ 41. But Root and Day filed contempt motions "in the course of their duties as attorney employees of DPA" on their client's behalf, they say. Motion to Dismiss at 4. So under binding Supreme Court precedent, they did not "ac[t] under color of state law" and these federal claims must all be dismissed. *Id.*

A "public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding." *Polk County v. Dodson*, 454 U.S. 312, 325 (1981). And as Jefferson admits, Day filed

---

[3] Jefferson "seek[s] declaratory and injunctive relief—and monetary damages against Defendants—for violations of" his federal rights. Amended Complaint at 1. But he cannot obtain a declaration without having pleaded a plausible violation of his rights. FED. R. CIV. P. 57 ("These rules govern the procedure for obtaining a declaratory judgment under 28 U.S.C. § 2201."); 10B C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2768 (3d ed.) ("[T]he requirements of pleading and practice in actions for declaratory relief are exactly the same as in other civil actions."). As explained below, he hasn't pled any claim— even accepting his non-conclusory allegations as true—that would entitle him to a declaration if proven. And as explained in the Court's prior opinions, Jefferson hasn't offered any basis for injunctive relief, either, whether in the form of a TRO or permanent injunction. *See* Order (DN 15) ("[T]he Court has grave doubts that Jefferson's elaboration on a federal antisuit injunction—apparently a sort of anti-*motion* order—could ever overcome significant questions of comity, abstention, and remedies."). Then as now, he hasn't alleged anything to suggest he faces imminent harm that would justify the use of this Court's equitable authority. Nor does Jefferson purport to assert a claim for municipal liability under *Monell v. Dep't of Soc. Services*, 436 U.S. 658 (1978).

the contempt motions "allegedly on the behalf of her client, the Plaintiff's son." Amended Complaint at 2. That's consistent with the attached exhibits, which Jefferson cites in his Amended Complaint. Attached Exhibits (DN 1-2) at 6 (Contempt Motion: Initiated by "the Defendant" based on "Christopher Jefferson … going on social media and talking about items discussed in juvenile court, which are confidential.").[4] None of Jefferson's allegations indicate that Day, or any of the Public Defenders, acted on the Commonwealth's behalf when filing the motions to limit the disclosure of their juvenile client's information.

Jefferson responds that contempt is different, at least when the lawyers work for the government. As he sees it, the "Defendants' authority to pursue contempt derives from their status as state employees exercising state-granted powers, which they weaponized to retaliate against Plaintiff's public commentary on the judicial process and his family's treatment." Amended Complaint at 6. That the Public Defenders "initiated and argued for contempt sanctions," and "invoked and wielded the coercive powers of the state," however, doesn't distinguish them from any other lawyer—public or private, criminal or civil, prosecution or defense—who invokes the *court*'s contempt authority in arguing for sanctions. *Id.* Jefferson cites no authority— and the Court is aware of none—to support the notion that *only* state actors can file a contempt motion, or that seeking contempt is inherently a state function. And Kentucky caselaw, to the extent it has any bearing on the question, points the other way: private parties frequently initiate contempt proceedings. *See, e.g., Stacy v. Wilson*, 2024 WL 3996970 (Ky. Ct. App. Aug. 30, 2024) (father of minor child filed a criminal-contempt motion against the child's mother for violation of custody agreement); *Halpin v. Hardy*, 2014 WL 4662326 (Ky. Ct. App. Sept. 19, 2014) (plaintiffs in a consumer-protection action filed motion for criminal contempt against defendants); *Getty v. Getty*, 581 S.W.3d 548, 568 (Ky. 2019) (two plaintiffs in a wrongful-death suit filed contempt motions against the defendant for destruction of evidence).

Jefferson further maintains that the Kentucky juvenile-confidentiality statute "does not authorize contempt proceedings against a parent or party absent a specific, valid court order." Amended Complaint at 6. The apparent implication, though hardly clear, is that the mere filing of a motion amounts to state action regardless of subsequent judicial action.

---

[4] The attached exhibit mentions the name of the juvenile. But consistent with KY. REV. STAT. § 610.340, the Court won't unnecessarily expose facts about the minors involved in the juvenile case. Nothing turns on those details anyhow.

To support this assertion, he cites *Commonwealth v. Burge*, 947 S.W.2d 805 (Ky. 1996).  But *Burge* provides no support for his position: the case never addresses the Kentucky juvenile-confidentiality statute (KY. REV. STAT. § 610.340), the parent-child relationship, or who may initiate contempt proceedings.  Instead, *Burge* addressed an unrelated issue: "[W]hether a finding of criminal contempt for violation of a domestic violence order … issued in a dissolution of marriage case, can bar a criminal prosecution on double jeopardy grounds."  947 S.W.2d at 807.  None of Jefferson's allegations implicate domestic violence orders or double jeopardy concerns.  So his citation to *Burge*, without any sort of theory as to its relevancy here, provides little support for his state-action argument.

Jefferson also notes that even under *Polk County*, a public defender *may* act under color of state law "while performing certain administrative and possibly investigative functions."  454 U.S. at 325.  The Supreme Court, a few years later, clarified that "public defenders are not immune from liability in actions brought by a criminal defendant against state public defenders who are alleged to have conspired with state officials to deprive the § 1983 plaintiff of federal constitutional rights." *Tower v. Glover*, 467 U.S. 914, 916 (1984).   And it may also be the case, the Sixth Circuit has noted, that an alleged policy or custom of public defenders that "systematically violates class members' constitutional rights by failing to represent them on the question of indigency" would be considered "state action."  *Powers v. Hamilton Cnty. Pub. Def. Comm'n*, 501 F.3d 592 (6th Cir. 2007).  So the mere fact of the Public Defenders' employment doesn't entirely shield them from § 1983 liability.

But none of Jefferson's allegations suggest that any of these potential exceptions apply.  He identifies no policy or custom that motivated or controlled the Public Defenders.  Conclusory allegations of a vague "conspiracy" similarly fall well short of establishing state action.  *See* Amended Complaint at 7.  And he hasn't provided any authority that suggests filing a motion on a client's behalf is an investigative or administrative function.  Because the Public Defenders weren't acting on the state's behalf in filing the contempt motions, Jefferson's § 1983 claims cannot succeed.

**ii. Federal rights.**  Even assuming the Public Defenders engaged in state action, Jefferson's allegations of federal constitutional violations would still fall short on the merits.

*a) First Amendment*.  Jefferson alleges that the Public Defenders violated his "First Amendment rights by initiating, encouraging, conspiring, and/or sustaining contempt proceedings based on Plaintiff's protected speech criticizing the Commonwealth's handling of a juvenile case involving his children."  Amended Complaint at 7. A First Amendment retaliation claim, like Jefferson's, requires that

6

the plaintiff engaged in protected conduct, that the defendant took an "adverse action" that would deter "a person of ordinary firmness from continuing to engage in that activity," and "that the adverse action was motivated at least in part as a response to" the protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999) (internal quotation marks omitted).

But on Jefferson's telling, the Public Defenders initiated contempt proceedings based on KY. REV. STAT. § 610.340, which requires the confidentiality of state-court juvenile records. And Jefferson alleges that he spoke "publicly about the case," Amended Complaint at 4, ¶ 21, made statements "critical of the Commonwealth's handling of the case," *id.* at 5, ¶ 23, and lodged "public criticisms of the juvenile proceedings and the treatment of his children," *id.* at 7, ¶ 32. But Jefferson's Amended Complaint fails to plausibly allege which "speech" he considers "protected." Amended Complaint at 7. He hasn't suggested that the underlying statute—KY. REV. STAT. § 610.340, or the Public Defenders' reliance on that statute—is unconstitutional. That is, nowhere in his complaint has he challenged the lawfulness of KY. REV. STAT. § 610.340 in a manner that would've prevented its enforcement in his contempt proceedings. Nor has he suggested any reason that his vaguely alleged "protected speech" prohibits public defenders from filing motions in furtherance of their client's interests. Nothing suggests a pretextual justification, either. The contempt motion (which Jefferson cites in his Amended Complaint and attaches to his original Complaint) mentions Jefferson's public posts about confidential juvenile proceedings, not his "criticisms" of the DPA. *See* Amended Complaint at 5, 7; Attached Exhibits (DN 1-2). So Jefferson hasn't plausibly alleged that when the Public Defenders filed the contempt motions—in which they argued that "his speech violated [KY. REV. STAT. § 610.340]"—some other, unlawful purpose motivated their conduct. His conclusory allegation that the Public Defenders initiated the motions in retaliation for unidentified protected speech therefore fails to state a plausible claim.

*b) Fourteenth Amendment.* Jefferson's second claim is entitled "Procedural and Substantive Due Process Violations." Amended Complaint 7. He contends that "Defendants Day, Root, and Jane Doe violated [his] due process rights by initiating and encouraging contempt proceedings without predicate court orders, lawful authority, or sufficient notice." *Id.* But Jefferson "alleges no violation of any recognized substantive due process right beyond a mere general assertion that such right[s] were violated and will be violated in the future by Defendants." Motion to Dismiss at 14–15. As that argument suggests, it's difficult to pinpoint Jefferson's perceived deprivation—and whether he relies on his "protected speech" or some other even-less-clear interest. To the extent that Jefferson's "substantive due process claim is his speech-retaliation claim," the Public Defenders maintain, that claim would

duplicate his First Amendment claim. *Id.* at 15.  Not just duplicative, in fact, but also displaced: "[W]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing such a claim." *Kiser v. Kamdar*, 831 F.3d 784, 791 (6th Cir. 2016) (internal citations and quotations omitted).  Particularly given the difficulty of proving up a so-called Substantive Due Process claim to begin with, any such allegations by Jefferson fall far short of stating a legally plausible claim.    Jefferson hasn't alleged any "constitutional right at stake." *Guertin v. State*, 912 F.3d 907, 918 (6th Cir. 2019) (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992)).  Or at least he hasn't alleged another right apart from his "protected speech." Amended Complaint at 7.

Nor does Jefferson's third (and related) claim—"Abuse of Process (Constitutional Tort—Day, Doe, and Root)"—salvage these pleading deficiencies. Amended Complaint at 8.  As the Public Defenders correctly argue, Jefferson cannot assert this claim under federal law.  *See, e.g., Moore v. WesBanco Bank, Inc.*, 612 F. App'x 816, 823 (6th Cir. 2015) ("[T]his court has consistently declined to recognize an abuse-of-process claim under 42 U.S.C. § 1983."); *Hawkins v. Webster County*, No. 4:18-cv-161, 2021 WL 682077, *3 (W.D. Ky. Feb. 22, 2021) ("Because Plaintiffs have not offered the Court any persuasive reasons why a federal abuse of process claim should be allowed in this particular case, this claim is dismissed.").  So this "abuse of process" claim, which seemingly and purportedly relies on federal law, fails under Rule 12(b)(6).

As for a more orthodox *procedural* due-process theory, Jefferson hasn't sufficiently pled any "constitutionally protected property interest" that he says was deprived without adequate notice, hearing, or other procedural protections. *Kaplan v. Univ. of Louisville*, 10 F.4th 569, 577 (6th Cir. 2021).  He hasn't identified any "independent sources of entitlement such as state law or a contract between parties." *Id.*  And as discussed above, he cannot come to federal court to collaterally attack the state-court judgment—which led to a suspended 2-day prison sentence and $750 fine. *See In re Cook*, 551 F.3d 542, 548 (6th Cir. 2009) ("appellate review of state court decisions and the validity of state judicial proceedings is limited to the Supreme Court").   So neither the prison sentence nor the fine can support his due-process claim.  And even had Jefferson identified an interest, none of his allegations indicate a lack of procedural protections.  Instead, they describe how he arrived in state court to "defend" his statements, Amended Complaint at 4, ¶ 22, following some sort of notice after the Public Defenders "served a contempt petition" on Jefferson, *id.* at 6, ¶ 26 (and *contra id.* at 7, ¶ 35); before he "faced the Henderson District Court for contempt," *id.* at 6.

And in any event, the state judge's court order—with its coercive effect to hold Jefferson in contempt[5]—would seemingly be the cause of any perceived deprivation—not the filing of the motion itself.  *Cf. Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 729 (6th Cir. 2011) (social worker's testimony during a child-custody hearing did not violate a plaintiff's due-process rights because "to the extent that [the plaintiff] suffered a deprivation of his fundamental right to family integrity, that deprivation was perpetrated by the juvenile court, not [the social worker]").  Here too, the state District Court, not the Public Defenders, made the contempt finding.  Having alleged neither a property nor liberty interest, nor anything about the sufficiency of process, his Fourteenth Amendment claims cannot succeed.

*c) Eighth Amendment.*  Jefferson considers the two contempt motions "punishment" that "was not only unjustified, but also excessive and chilling in nature, aimed at silencing Plaintiff through threat of incarceration"—all in violation of the Eighth Amendment.  Amended Complaint at 12.  But as the Public Defenders point out, he hasn't cited any cases that suggest the mere *initiation* of contempt proceedings by public defenders amounts to an infliction of "cruel and unusual punishments." U.S. CONST. amend. VIII.  After all, these lawyers lack authority to themselves convict, sentence, punish, or confine him.  Nor is anything about the mere filing of a contempt *motion*—a longstanding pillar of Anglo-American jurisprudence— "repugnant to the conscience of mankind." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal citations and quotations omitted).  So this Eighth Amendment claim would fail even assuming the Public Defenders were state actors.

*d) Civil conspiracy.*  According to Jefferson, the Public Defenders and an unnamed Jane Doe "reached a mutual understanding to use the power of the court to retaliate against [his] protected speech."  Amended Complaint at 10–11.  But the Public Defenders contend that his allegations lack the "specificity and plausibility" to state a civil-conspiracy claim.  Motion to Dismiss at 23.  They're right that Jefferson hasn't alleged anything about the Defendants' agreement (besides a conclusory assertion that they reached one).  A mere recitation of the cause of action falls well

---

[5] Jefferson alleges that he "seeks … to halt this unconstitutional misuse of *judicial authority*."  Amended Complaint at 2 (emphasis added).  But he's failed to explain how public defenders and an unnamed Jane Doe (a "private individual") exercise "judicial authority" in Kentucky state courts.  And the Commonwealth's constitution squarely contradicts his contentions: "The judicial power of the Commonwealth shall be vested *exclusively* in one Court of Justice which shall be divided into a Supreme Court, a Court of Appeals, a trial court of general jurisdiction known as the Circuit Court and a trial court of limited jurisdiction known as the District Court." KY. CONST. § 109 (emphasis added).

9

short of the pleading standards for a conspiracy claim: "It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Spadafore v. Gardner*, 330 F.3d 849 (6th Cir. 2003) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)).

*e) Supervisory liability.* Jefferson claims that Preston "failed to supervise or correct unconstitutional conduct by subordinates and thereby allowed the violation to occur." Amended Complaint at 8. But Jefferson has failed to "allege that Preston even had supervisory authority over Defendants Day and/or Root." Motion to Dismiss at 18. And that's required to state a claim against Preston under a "supervisory" theory of liability: at minimum, "the plaintiff must show that the defendant at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Peatross v. City of Memphis*, 818 F.3d, 233, 242 (6th Cir. 2016) (internal citations and quotations omitted). That is, a supervisor "'cannot be held liable simply because ... she was charged with overseeing' subordinate officers who violated the plaintiff's constitutional rights." *Venema v. West*, 133 F.4th 625, 633 (6th Cir. 2025) (citing *Peatross*, 818 F.3d at 241). Jefferson hasn't alleged anything about Preston's knowledge of the contempt motions or the juvenile proceedings against Jefferson's son. And conclusory allegations that merely recite the cause of action fail to satisfy federal pleading standards, as noted above.

### B. State-law claims against the Public Defender Defendants

**1. Malicious prosecution.** The Public Defenders contend that Jefferson's malicious-prosecution claim fails because he hasn't alleged "malice" or "probable cause," as required by Kentucky Law. *See* Motion to Dismiss at 8. This state tort requires, among other things, those two elements when the defendant initiated a civil or criminal action against the plaintiff. *See Martin v. O'Daniel*, 507 S.W.3d 1, 11–12 (Ky. 2016). But nothing in Jefferson's Amended Complaint (apart from a few legal conclusions) indicates that the Public Defenders initiated the contempt motions without probable cause and with malice. His allegations suggest that (at least in part) the Public Defenders filed contempt motions based on the Kentucky juvenile-confidentiality statute. And none of his allegations plausibly suggest that they filed these motions for another pretextual reason. Further, none of his allegations indicate malice on the Public Defenders' part. No "evil or unlawful motive or purpose" seemingly caused the Public Defenders to file the contempt motion. *See Estep v. Combs*, 467 F. Supp. 3d 476, 500 (E.D. Ky. 2020) (quoting *Stearns Coal Co. v. Johnson*, 37 S.W.2d 38 (Ky. 1931)). That Jefferson seems to disagree with the Public Defenders' reliance on the Kentucky juvenile-confidentiality statute does not give rise to a malicious-prosecution claim. (And again, nothing about Jefferson's pleadings

indicates that he's challenging the lawfulness of that statute.).  So his allegations fall short of pleading a Kentucky malicious prosecution claim.

**2. IIED.**  Jefferson alleges that "Day and Root engaged in extreme and outrageous conduct by repeatedly initiating baseless contempt proceedings designed to punish and intimidate Plaintiff."  Amended Complaint at 10, ¶ 46.  Kentucky courts describe this tort as a "gap-filler."  *Childers v. Geile*, 367 S.W.3d 576, 581 (Ky. 2012).  That is, "if an action can lie in a 'traditional tort,' 'the tort of outrage will not lie.'"  *Id.* (citing *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295, 299 (Ky. App. 1993)).  Besides his parroting of the cause of action, Jefferson hasn't plausibly alleged that the Public Defenders intended to cause him emotional distress.  So his emotional distress is neither "the 'crux' or 'sole intent' of the torts alleged."  *Easley v. Cnty. of Warren, Kentucky*, No. 1:25-cv-29, 2025 WL 2810019, at *6 (W.D. Ky. Sept. 30, 2025) (quoting *Estep*, 366 F. Supp. 3d at 887).

Moreover, as the Public Defenders contend, Jefferson must allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Mik v. Fed Home Loan Mortg. Corp.*, 743 F.3d 149, 169 (6th Cir. 2014).   His allegation that the Public Defenders filed a meritless contempt motion does not arise to the level of harm required by the tort.  *See Perez v. Hyman*, No. 6:22-cv-230, 2023 WL 11892924, at *6 (E.D. Ky. Aug. 15, 2023) ("The conclusion that Defendants filed a purportedly meritless counterclaim does not constitute the sort of outrageous and intolerable conduct required to maintain an IIED claim.").  And no other allegations indicate the kind of "outrageous and intolerable" conduct necessary to plead a plausible IIED claim.  *Osborne v. Payne*, 31 S.W.3d 911, 913–14 (Ky. 2000).  Because he cannot rely on "[t]hreadbare recitals of a cause of action's elements, supported by mere conclusory statements," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), his IIED claim cannot succeed.

## C.  Jane Doe claims

Jefferson has neither identified nor served "Jane Doe"—and well more than 90 days have passed since he filed his Amended Complaint.[6]  So he has failed to comply

---

[6] "On information and belief," Jefferson alleges, "Jane Doe" is "the mother of the juvenile respondent."  Amended Complaint at 7, ¶ 32.  Jefferson also describes "Jane Doe" as a "private individual, currently unnamed."  *Id.* at 3, ¶ 12.  Regardless, no allegation in the complaint states a plausible claim against Jane Doe.  Whether or not this unnamed defendant

11

with FED. R. CIV. P. 4(m): "If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." This rule applies to pseudonymous defendants. *See Petty v. County of Franklin, Ohio*, 478 F.3d 341, 345 (6th Cir. 2007) ("[Plaintiff] has yet to identify John Does # 1 and # 2, and thus has yet to serve them, clearly in violation of the [90]–day window provided by Rule 4(m)"). Jefferson hasn't shown "good cause" under Rule 4(m) for this failure, either. And although the Public Defenders' motion doesn't seek dismissal of the claims against Jane Doe, their pleading arguments apply equally if not more so to the thin allegations regarding Doe. Given Jefferson's *pro se* status, however, the Court affords him 90 additional days to provide proof of service or otherwise address Rule 4(m). If he does not, the Court will dismiss the claims against Jane Doe as well.

## ORDER

The Court grants the Public Defenders' motion to dismiss without prejudice. Jefferson requested "leave to amend" his complaint (again) should the Court grant the Public Defenders' motion to dismiss. Response (DN 21) at 3. Although he's already filed an amended complaint and the Court has expressed skepticism of his claims in two previous orders, Jefferson now has the full benefit of this opinion's description of his pleading shortcomings. Because the "court should freely give leave when justice so requires," FED. R. CIV. P. 15(a)(2), Jefferson may file an amended complaint—taking heed of the Court's, and the Public Defenders', previously-identified deficiencies—by May 15, 2026. And as noted above, Jefferson must address the status of the Jane Doe claims under Rule 4(m) within 90 days or else the Court will dismiss those claims as well.

---

is "the mother of the juvenile respondent," Jefferson must identify and serve her consistent with the Federal Rules of Civil Procedure.